IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MAHONEY,<br>  Plaintiff, | CIVIL ACTION NO: |
| | 12-CV-03438 |
| v. | |
| STEVE WEISS MUSIC, INC.,<br>  Defendant. | |

## ORDER

AND NOW this _____ day of _____, 2012, upon consideration of defendant's motion to dismiss plaintiff's complaint, and any response thereto by plaintiff, it is hereby ORDERED AND DECREED that plaintiff's complaint is DISMISSED with prejudice in its entirety.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MAHONEY,<br>    Plaintiff, | : | CIVIL ACTION |
| | : | |
| | : | NO.: 12-CV-03438 |
| v. | : | |
| | : | |
| STEVE WEISS MUSIC, INC.,<br>    Defendant. | : | |

### MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6) BY DEFENDANT, STEVE WEISS MUSIC, INC.

The defendant, Steve Weiss Music, Inc., through its attorneys, moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12 (b)(6) and states the following in support thereof:

1. On or about June 18, 2012, the plaintiff filed and served a Complaint against the defendant. Defendant executed a waiver of service.

2. This timely Motion to Dismiss follows.

3. In Count I of the Complaint, plaintiff alleges a violation of the Americans with Disabilities Act as amended ("ADAAA") for failure to accommodate his perceived disability.

4. Plaintiff has failed to state a cause of action under the ADAAA as he fails to establish that he has a disability. Moreover, the plaintiff for reasons set forth in the supporting brief, has failed to establish a cause of action upon which relief may be granted under the ADAAA.

5. Plaintiff has failed to state a cause of action under the ADAAA as he fails to establish that he is an "otherwise qualified individual with a disability". Moreover, for reasons set forth in the supporting brief, the plaintiff has failed to establish a cause of action upon which relief may be granted under the ADAAA.

6. Plaintiff has failed to state a cause of action under the ADAAA for failure to accommodate as there is no right to accommodation for individuals who are perceived of as having a disability.

7. In Count II of the Complaint, Plaintiff alleges retaliation in violation of the ADAAA.

8. Plaintiff has failed to state a cause of action for retaliation in violation of the ADAAA as he fails to establish the elements that constitute retaliation. For reasons set forth in

the supporting brief, the plaintiff has failed to establish a cause of action upon which relief may be granted under the ADAAA.

9. In Count III of the Complaint, plaintiff alleges a violation of the Pennsylvania Human Relations Act ("PHRA") for disability discrimination.

10. Plaintiff has failed to state a cause of action under the PHRA as the analytical framework to establish a disability claim under the PHRA is the same as under the ADA. As such he fails to establish the elements of disability discrimination as defined by the ADA and the PHRA. Moreover, for reasons set forth in the supporting brief, plaintiff has failed to set forth a cause of action upon which relief may be granted under the PHRA.

11. In Count IV of the Complaint, Plaintiff alleges a violation of the Pennsylvania Human Relations Act ("PHRA") for retaliation.

12. Plaintiff has failed to state a cause of action under the PHRA as the analytical framework to establish a retaliation claim under the PHRA is the same as under the ADAAA. As such, he fails to establish the elements that constitute retaliatory action as defined by the ADAAA and the PHRA. For reasons set forth in the supporting brief, the plaintiff has failed to set forth a cause of action upon which relief may be granted under the PHRA.

WHEREFORE, defendant respectfully requests that this Court dismiss plaintiff's complaint in its entirety and with prejudice.

                                                   Respectfully submitted,

                                                   /s/ Stephen S. Pennington
                                                 /s/ Jamie Ray-Leonetti
                                                 Haviv Trocki-Videll

                                                 1515 Market Street, Suite 1300
                                                 Philadelphia, PA  19102
                                                 (215) 564-2363
                                                 Attorneys for Defendant, Steve Weiss Music, Inc.

DATED: August 17, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL MAHONEY,** | : | **CIVIL ACTION NO.:** |
| **Plaintiff,** | : | **12-CV-03438** |
| | : | |
| v. | : | |
| | : | |
| **STEVE WEISS MUSIC, INC.,** | : | |
| **Defendant.** | : | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

The Defendant, Steve Weiss Music Inc., (SWM) through its attorneys, files this Brief in Support of its Motion to Dismiss Plaintiff's Complaint for failure to state any claim upon which relief may be granted.

## I. PROCEDURAL HISTORY:

On June 18, 2012, the Plaintiff filed and served his Complaint. Defendant executed a timely waiver of service. This timely motion to dismiss and supporting brief is now filed on behalf of defendant.

## II. STATEMENT OF FACTS:

In the introductory paragraph of his Complaint, plaintiff Michael Mahoney provides an inarticulate and in many ways inaccurate description of the day to day operations of Steve Weiss Music (SWM) (Complaint ¶ 1). SWM is not just a "music store" as described by plaintiff in ¶ 8 of his Complaint. In reality, SWM is self described as the "go-to shop for your percussion

1

needs" (www.steveweissmusicinc.com).[1] SWM prides itself on the rental of quality percussion instruments to a variety of clients including the Philadelphia Orchestra. Id. Early on, SWM was the first company of its kind in the Philadelphia area renting instruments like marimbas, timpani or taxi horns. Id. Even a cursory review of the company website shows that SWM is in the business of renting and selling instruments which create a cacophony of sound.[2] SWM is more than just a run of the mill instrument rental company. SWM is all about rare and specialty items, renting things like sirens and gongs. Id. Given the nature of the business; loud noises, including the legitimate business purpose of testing its sirens, horns, gongs etc. to ensure that they are in proper working order before sending them out to customers, is essential to day to day operations.[3]

Plaintiff, Michael Mahoney was employed by SWM beginning in or around August 1999 (Complaint ¶ 11). He was responsible for properly filling orders for instruments and packing the same so that they could be shipped to customers. Mahoney has never made SWM aware of any alleged "disability", actual, perceived or otherwise. At best, he made SWM aware of some impairment including "hypertension and, on occasion, hypertensive crisis" on or about June 4,

---

[1] Defendant cites the SWM website in an effort to provide an accurate and articulate description of the business as compared to what plaintiff sets forth in paragraphs 1 and 8 of his Complaint.

[2] On the one hand, plaintiff alleges that SWM is a "music store" (Complaint ¶ 8). On the other hand, he alleges that there was no reason to blow an air horn in the workplace and that "blowing of horns was not part of its general business practice" (Complaint ¶¶ 15 and 20). These allegations are contradictory to one and other and inconsistent with the description set forth on the SWM website.

[3] Plaintiff's assertions that loud horns were blown in the workplace without a legitimate purpose and that "horns and /or the blowing of horns were not a part of defendant's daily business practice. . . . ." is not supported by the facts (Complaint ¶¶ 1, 16). Further, it must be noted that plaintiff complains of one employee, John O'Connor, who would "harass" him by blowing loud horns in the workplace (Complaint ¶ 1). Thus, contrary to plaintiff's assertion in ¶ 1, defendant, company SWM did not harass or blow horns.

2

2009 (Exhibit A, attached to Plaintiff's complaint). Plaintiff seems to base his complaint on some isolated instances of juvenile conduct or "horseplay" by one employee John O'Connor (Complaint ¶¶ 15, 26). Plaintiff himself describes this conduct as "random" (Complaint ¶ 16).

Despite being under no obligation to do so, SWM responded to plaintiff's concerns about "excessive noise" or what plaintiff's own physician described as "horseplay" in the workplace, and a "juvenile workplace" (Exhibit A, attached to Plaintiff's complaint) by, among other things, reminding employees of the need to make efforts, when possible, to test horns, sirens etc. outside at the SWM location. On the face of his complaint, plaintiff has provided no facts to support even so much as a bald conclusion that somehow excessive noise and/or horn blowing at SWM was directed at him because of hypertension or any other reason, or done to create a hostile work environment or in retaliation for plaintiff raising concerns about excessive noise, horseplay or a juvenile workplace.

Plaintiff Mahoney was not constructively discharged from his job at SWM. He left SWM voluntarily, and with benefits and severance pay. Mr. Mahoney now seeks to punish SWM for having an employee who he described to his physician as engaging in "horseplay" (Exhibit A, attached to plaintiff's complaint). For the reasons set out below, this is not a violation of the Americans with Disabilities Act as amended or any other law.

### III. STATEMENT OF QUESTIONS INVOLVED:

A. WHETHER PLAINTIFF FAILED TO STATE A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AS AMENDED FOR FAILURE TO ACCOMMODATE?

Suggested Answer: YES

3

B.    WHETHER PLAINTIFF FAILED TO STATE A CLAIM UNDER THE AMERICANS WITH DISABILITIES ACT AS AMENDED FOR RETALIATION?

Suggested Answer: YES

C.    WHETHER PLAINTIFF FAILED TO STATE A CLAIM UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT FOR DISABILITY DISCRIMINATION?

Suggested Answer: YES

D.    WHETHER PLAINTIFF FAILED TO STATE A CLAIM UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT FOR RETALIATION?

Suggested Answer: YES

IV.   **ARGUMENT:**

A.    **Count I must be dismissed for failure to state a claim as Plaintiff has not established nor can he establish that he has a disability or disabilities as defined under the Americans with Disabilities Act[4].**

Count I of Mr. Mahoney's ("Plaintiff's ") Complaint must be dismissed because Plaintiff has not pled or proven that his impairments substantially limit his ability to perform a major life activity. According to the Americans with Disabilities Act ("ADA"), in order to make out a prima facie case of discrimination, a plaintiff must first show that it is known that he is disabled within the meaning of the ADA, *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d

---

[4] On January 1, 2009, the ADA Amendments Act of 2008 ("ADAAA"), Pub. L. 110-325, 122 Stat. 3553, became effective. Because the conduct and events at issue in Mr. Mahoney's claim occurred from April, 2009 through June 25, 2010, the ADAAA applies throughout this motion.

Cir.1999). To do so, a plaintiff must plead and ultimately prove that he has (a) "a physical or mental impairment but that this impairment substantially limits one or more major life activities of such individual (b) a record of such an impairment; or is (c) "regarded as" having such an impairment."(See *42 U.S.C. § 12102(2)*).

Here, it is unclear on the face of the Complaint whether plaintiff is alleging that he has an actual disability under prong one of the definition, or whether he is alleging that he was "regarded as" or "perceived" as disabled by SWM under prong three. In either case, plaintiff's claims must fail.[5]

### 1. **Any claim for actual disability fails.**

In order to plead the elements of an actual disability, plaintiff must allege at least one major life activity or major bodily function that is substantially limited by the impairment. Plaintiff's Complaint is devoid of any such allegations. At best, plaintiff may be trying to imply that he is substantially limited in the major life activity of "working". According to the EEOC, under the ADAAA, "[d]emonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working" (www.eeoc.gov (questions and answers on the final rule implementing the ADAAA, No.: 21)). Here, Plaintiff seems to claim that he cannot be exposed to the horn and siren blowing that is unique to the day to day operations at SWM. This, without more, is not sufficient to prove that he is substantially limited in working.

### 2. **Any claim for "regarded as" or "perceived" disability fails.**

Plaintiff claims that "defendant perceived [his] hypertension, hypertensive crisis, and acute stress disorder as disabilities (Complaint ¶ 43). In order to prove a "perceived" disability

---

[5] Plaintiff does not allege "record of" impairment or disability.

5

under prong three, plaintiff must show that SWM "took an action prohibited by the ADA because of a perceived impairment that is not both transitory and minor" (Id at No.: 5; see also regulations Section 1630.2(g)). Any "perceived" claim fails for three reasons. First, SWM had no knowledge of any impairment until at least some time in June 2009, and thus cannot be said to take an action based upon something it had no knowledge of. Second, Plaintiff himself admits that his alleged impairments are transitory and minor (Complaint ¶ 18 "episodic"). Third, individuals who are merely "regarded as" disabled have no right to reasonable accommodation under the ADAAA. Id. Reasonable accommodation is exactly what plaintiff asks for (Complaint ¶¶19, 20).

The Equal Employment Opportunity Commission ("EEOC") regulations define an impairment as "[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic skin, and endocrine." 29 C.F.R. § 1630.2(h)(1) (2006). The diagnosis of impairment alone is not enough to establish disability under the ADA, as a plaintiff must prove that the impairment substantially limits his individual abilities in one or more major life activities. See *Bialko v. Quaker Oats* 2010 U.S. Dist. LEXIS 30723 citing *Smith v. Grattan Family Enters.*, LLC, No. 08cv14314, 2009 U.S. Dist. LEXIS 101305, 2009 WL 3627953 (E.D. Mich. Oct. 30, 2009 citing *Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002).

To determine whether plaintiff is substantially limited, courts should consider the following factors: '(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the [*26] expected

6

permanent or long term impact of or resulting from the impairment.'" *See Namako v. Acme Mkts., Inc.*, No. 08-3255, 2010 U.S. Dist. LEXIS 23182, 2010 WL 891144, at *4 (E.D. Pa. Mar. 11, 2010) (quoting *Emory v. AstraZeneca Pharms. LP*, 401 F.3d 174, 179-80 (3d Cir. 2005)); See also *Seibert v. Lutron Electronics*, No. 08-5139, 2009 U.S. Dist. LEXIS 110823, 2009 WL 4281474, at *5 (E.D. Pa. Nov. 30, 2009) in which the Court stated "A temporary, transient, or nonpermanent impairment is not a disability that substantially limits a major life activity."

In Count I, Plaintiff simply alleges that his conditions of acute stress disorder, hypertension, and hypertensive crisis are disabilities under the ADA as amended, that they were perceived as such by SWM, and that SWM refused to grant Plaintiff's requested accommodation to have O'Connor stop sounding horns, etc. Plaintiff goes no further in the Complaint than to identify his alleged impairments. He does not plead, allege, identify, or state how each condition ( i.e. impairment) substantially limits his ability to perform a major life activity or engage in a major bodily function. Further, there is no evidence that he made anyone at SWM aware of his alleged impairments at any time before sometime in June 2009, and after the alleged first instance of horn blowing by O'Connor. He seems to say this on the job noise caused his alleged impairment.

A disability determination is an individualized inquiry to be decided on a case-by-case basis (See *Blake v. UPMC Passavant Hosp.*, No. 06-193, 2008 U.S. Dist. LEXIS 27708, 2008 WL 936917, at *4 (W.D. Pa. Apr. 4, 2008) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999)). As such, case law pertaining to each of Plaintiff's alleged impairments will be discussed separately below.

### ***Plaintiff's Acute Stress Disorder is not a disability under the ADA.***

First it should be reiterated that plaintiff does not plead in his complaint that his acute stress disorder substantially limits his ability to perform a major life activity. Thus, it does not rise to the level of disability.

Even if he had pled that a major life activity was substantially limited by his acute stress disorder, in *Kiser v. Potter*, the United States District Court for the Western District of Pennsylvania found a claim of disability which stemmed from the "severe stress, anxiety, and depression" which a plaintiff allegedly suffered as a result of on-the-job harassment was not a disability under the ADA, (2012 U.S. Dist. LEXIS 47631). In its decision, the court cited *Ashton v. AT&T Co.*, 225 F. App'x 61, 66 (3d Cir. 2007), which concluded that the plaintiff's impairment—acute stress disorder and anxiety—was: (1) situational and triggered by her relationship with her supervisor; (2) of "limited duration," even assuming it lasted for the sixth months plaintiff alleged; and (3) not substantially limiting). As in *Ashton,* plaintiff Mahoney claims acute stress disorder, which his doctor says, much like the doctor in *Kiser,* was due to interactions at work (Exhibit B attached to Plaintiff's Complaint). This Court should find that Plaintiff's acute stress disorder is not a disability under the ADAAA.

Additionally, since acute stress disorder was not found to be substantially limiting and therefore not a disability under the ADA, it was noted that the Court must dismiss Plaintiff's "record of impairment" claim. citing *Tice v. Centre Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001) which held that "one attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA.

.

### *Hypertension and Hypertensive Crisis are not disabilities under the ADA.*

Although Section 1630.2(j)(1)(vii) of the EEOC regulations states that an episodic impairment is a disability if it would substantially limit a major life activity when active, and hypertension is listed as an impairment that MAY qualify, plaintiff's hypertension and hypertensive crisis do NOT qualify. Nowhere in his complaint does plaintiff plead that either his hypertension or his hypertensive crisis substantially limits his ability to perform any major life activity or major bodily function. As such, on the face of the Complaint plaintiff's hypertension and hypertensive crisis are not disabilities because no major life activity is alleged to be substantially limited by either of these impairments.[6]

In *Robuck v. Mine Safety Appliances Co.*, 2010 U.S. Dist. LEXIS 116871 the court noted that under the ADA, an employer is only liable if it fails to provide "reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability." Thus, the ADA imposes on an employee the "initial duty to inform the employer of a disability." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 803 (7th Cir. 2005)(citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)).

**B.     Even if this Court somehow finds that plaintiff has a disability or disabilities as defined under the Americans with Disabilities Act, Count I must be dismissed for failure**

---

[6] Plaintiff also mentions diverticulitis in his complaint but there is no claim that SWM was aware of it or that it was substantially limiting, or that any alleged action was taken because of it (Complaint ¶¶ 12-13).

9

**to state a claim as Plaintiff is not "otherwise qualified" to perform the "essential functions" of his job.**

Plaintiff states that he cannot work in an environment where noise from horn blowing to test instruments can be heard. This kind of noise is an essential element of the SWM business, and the ability to function around such noise is an essential function of Mahoney's position, or of anyone's position at SWM (statement of facts *supra)*.

A "qualified individual with a disability" is one who (1) satisfies the prerequisites for the position and (2) can perform the essential functions of the position held or desired, with or without reasonable accommodation. 42 U.S.C. §12111(8); See also *Lennex v. Wal-Mart Stores E., LP*, 2008 U.S. Dist. LEXIS 117687 and *Diaz v. City of Phila.*, 26 Am. Disabilities Act Man. Newsl. (BNA) 697 citing *Gaul v. Lucent Technologies, Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). Whether a particular function is essential is a factual determination that must be made on a case by case basis. See EEOC Interpretive Guidance on Title I of the Americans with Disabilities Act, 29 C.F.R. pt. 1630, app. 1630.2(n) (2000). It follows that none of the factors nor any of the evidentiary examples alone are necessarily dispositive. A job's "essential functions" are defined in 29 C.F.R. § 1630.2(n)(1) as those that are fundamental, not marginal. 29 C.F.R. § 1630.2(n)(2) provides a non-exhaustive list of three factors to assist in determining whether a job function is essential: 1) the reason the position exists is to perform the function; 2) there are a limited number of employees available among whom the performance of that job function can be distributed; and 3) the function is highly specialized so that the incumbent in the position is hired for his or her expertise.

To aid in the determination, 29 C.F.R. § 1630.2(n)(3) also sets forth a non-exhaustive list of seven examples of evidence that is designed to assist a court in identifying the "essential functions" of a job. They include: 1) The employer's judgment as to which functions are essential; 2) Written job descriptions prepared before advertising or interviewing applicants for the job; 3) The amount of time spent on the job performing the function; 4) The consequences of not requiring the incumbent to perform the function; 5) The terms of a collective bargaining agreement; 6) The work experience of past incumbents in the jobs; and/or 7) The current work experience of incumbents in similar jobs.

Although many factors contribute to the determination of whether certain aspects of a particular job are essential and fundamental to a job, it is clear in plaintiff's situation that as a shipper for SWM, he must be in an environment where sounds from percussion and other musical instruments will be routinely heard. For SWM is in the business of renting and selling percussion instruments to its clients. To make sure the instruments work as expected, they are routinely sounded by employees before being rented/or sold and after being returned (see statement of facts *supra*). Plaintiff claims he cannot work in an environment where he can hear loud horn blowing. As such, Plaintiff is not otherwise qualified to perform the essential functions of his job. There is really no way for SWM to conduct its business without instruments being tested.

**C.     Count I must also be dismissed for failure to state a claim, as Plaintiff pleads only that he was "perceived" as having a disability, and there is no right to accommodations under the Americans with Disabilities Act for those individuals who are merely perceived**

11

or "regarded as" as disabled.

. In *Weber v. Strippit, Inc.,* 186 F.3d 907, 917 (8th Cir. 1999), the court ruled that non-disabled employees perceived as disabled by their employers are not entitled to reasonable accommodations under the ADA reasoning that the ADA cannot reasonably have been intended to create a disparity in treatment among impaired but non-disabled employees, denying most the right to reasonable accommodations but granting to others, because of their employers' misperceptions, a right to reasonable accommodations no more limited than those afforded actually disabled employees (See also *Danyluk-Coyle v. St. Mary's Med. Ctr.*, 2001 U.S. Dist. LEXIS 24574).

### D. Count II must be dismissed for failure to state a claim as Plaintiff has failed to plead the elements of a retaliation claim under the Americans with Disabilities Act.

To establish a *prima facie* case of retaliation under the ADA (and PHRA), a plaintiff must show: (a) protected employee activity; (b) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (c) a causal connection between the employee's protected activity and the employer's adverse action. *Weaver v. County of McKean*, 2012 U.S. Dist. LEXIS 61920 citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997). Plaintiff failed to plead elements (b) and (c) above. Therefore, his retaliation claim must fail.

The case before this Court is distinguishable from *O'Connor v. City of Newark,* 440 F.3d 125, 28 (3d Cir.2006), quoting *Suppan v. Dadonna,* 203 F.3d 228, 234-35 (3d Cir.2000)) where the court found that "[e]ven 'an act of retaliation as trivial as failing to hold a birthday party for a public employee, if 'intended to punish her for exercising her free speech rights,' may be

12

actionable if under the circumstances it would be sufficient to 'deter a person of ordinary firmness' from exercising his or her rights. Here, there is no adverse action against Mahoney. For the instrument sounding i.e. horn and instrument testing was not an adverse action, and did not occur only after or contemporaneously with Mahoney's participation in protected activity. It was not done for the purpose of punishing plaintiff. To the contrary, horn blowing is routinely done because of the legitimate business purpose of testing these instruments (see statement of facts *supra*).

Moreover, plaintiff fails to plead and prove a causal connection exists between some protected activity and alleged discrimination. The causal connection prong of the retaliation test requires a plaintiff to prove "either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Weaver v. County of McKean*, 2012 U.S. Dist. LEXIS 61920 quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007). Accordingly, "[t]he amount of time between the protected activity and the alleged retaliation is a circumstance to be considered by a fact-finder in determining if the plaintiff has established the required causation." *Shellenberger v. Summit Bancorp, Inc., 318 F.3d at 189* Here, the horn blowing did not start and was not done just when Plaintiff was around to hear it. It was, and continues to be, a regular part of the SWM business.

To the extent that plaintiff claims hostile work environment on the basis of disability, this too must fail. In *Vendetta v. Bell Atl. Corp.*, 1998 U.S. Dist. LEXIS 14014, the court noted that the elements of a disability-based hostile work environment claim are the same as the elements of a prima facie case advanced under Title VII. Accordingly, plaintiff must show that: a) he is a qualified individual with a disability under the ADA; b) he was subject to unwelcome

13

harassment; c) the harassment was based on his disability; d) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment; and e) defendant company knew or should have known of the harassment and failed to take prompt effective remedial action. Id. "The hostility of the work environment must be determined by considering factors such as the frequency, severity, or threatening nature of the purportedly harassing conduct." Id. Further, in *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001), the court stated that mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the implications of employment to implicate Title VII liability."). Simple teasing, offhand comments and isolated incidents don't rise to hostile work environment.

Plaintiff also claims that this allegedly hostile work environment caused him to be constructively (discharged) terminated. However this claim must be dismissed as plaintiff fails to plead or establish the elements of such a claim. An employee has been constructively discharged when an "employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 316 n.4 (3d Cir. 2006). This is simply not the case here. Plaintiff does not plead that the conditions at SWM would be intolerable to any reasonable person. In fact conditions at SWM had not changed since Plaintiff was hired in 1999. Plaintiff was not forced to quit but rather left on his own accord and was given a severance package.

**E.      Count III and Count IV of Plaintiff's Complaint must be dismissed for failure to**

**state a claim under the Pennsylvania Human Relations Act.**

Count III and Count IV of Plaintiff's Complaint must be dismissed for failure to state a claim under the Pennsylvania Human Relations Act ("PHRA"). The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability . . . in regard to the job application procedures, the hiring, advancement, or discharge of employees . . . ." 42 U.S.C. § 12112(a). The analytical framework of a disability discrimination action under the PHRA is essentially identical to that of a claim under the ADA. *See Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996); *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998). Accordingly, the analysis of Plaintiff's ADA claim is equally applicable to his claims under the PHRA. In light of these precedents, the PHRA claims will not be discussed further and must be dismissed for the same reasons as those claims advanced under the ADAAA.

## CONCLUSION

For the reasons discussed above, defendant SWM respectfully requests that this Court dismiss plaintiff's complaint in its entirety and with prejudice.

                                        Respectfully submitted,

                                        /s/ Stephen S. Pennington
                                        /s/ Jamie Ray-Leonetti
                                        Haviv Trocki-Videll

                                        1515 Market Street, Suite 1300
                                        Philadelphia, PA  19102
                                        (215) 564-2363
                                        Attorneys for Defendant, Steve Weiss Music, Inc.

DATED:  August 17, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MAHONEY,<br>　　　Plaintiff,<br><br>v.<br><br>STEVE WEISS MUSIC, INC.,<br>　　　Defendant. | CIVIL ACTION NO:<br><br>12-CV-03438 |

## CERTIFICATE OF SERVICE

I, Jamie Ray-Leonetti, Esquire hereby certify that a true and correct copy of the foregoing motion to dismiss and supporting brief was served this date via ECF electronic filing on Counsel for Plaintiff as follows:

>	Swartz Swindler, LLC
>	Richard S. Swartz, Esq.
>	Justin L. Swindler, Esq.
>	rswartz@swartz-legal.com
>	1878 Marlton Pike East, Suite 10
>	Cherry Hill, NJ  08003


>	/s/ Jamie Ray-Leonetti, Esq.
>	JAMIE RAY-LEONETTI
>
>	Counsel for Defendant

DATED:  August 17, 2012