IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL MAHONEY<br>6136 Bingham Street, Apt 5<br>Philadelphia, PA, 19111<br><br>  Plaintiff<br><br>v.<br><br>STEVE WEISS MUSIC, INC.<br>2324 Wyandotte Road,<br>Willow Grove, PA, 19090<br><br>  Defendant. | **CIVIL ACTION**<br><br>**NO.: 2:12-cv-03438-JHS**<br><br>**JURY TRIAL DEMANDED** |

## AMENDED CIVIL ACTION COMPLAINT

Plaintiff Michael Mahoney (hereinafter "Plaintiff"), by and through undersigned counsel, hereby complains as follows against Steve Weiss Music, Inc. (hereinafter "Defendant").

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Defendant of the Americans with Disabilities Act ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). Plaintiff suffered from hypertension, acute stress disorder, and hypertensive crisis. Loud horns blown in the workplace, without a legitimate purpose, exacerbated Plaintiff's medical conditions. Plaintiff accordingly, and per his physician's direction, requested that the horns not be unnecessarily blown at work. In response, Defendant harassed Plaintiff by blowing the loud horns more and by going so far as to sneak up to Plaintiff to blow the horns to startle Plaintiff; it became a game for Defendant to do so. Defendant then constructively discharged

1

Plaintiff because he complained about the harassment and the horn blowing, which was done to harass Plaintiff for requesting the accommodation in the first place. As a result, Plaintiff suffered damages as set forth herein.

## JURISDICTION AND VENUE

2. The Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims herein arise under laws of the United States, the ADA. This Court has jurisdiction over Plaintiff's state law claims because they are supplemental to Plaintiff's underlying federal claims and arise out of the same transaction or occurrences, having the same common nucleus of operative facts pursuant to 28 U.S.C. § 1367(a).

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice.

4. Pursuant to 28 U.S.C. §§ 1397(b)(1) and (b)(2), venue is properly laid in this judicial district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff has exhausted all administrative remedies required as a prerequisite to the filing of his instant ADA and PHRA claims.

## PARTIES

6. The foregoing paragraphs are incorporated herein as if set forth in full.

7. Plaintiff is an adult individual with an address as set forth in the caption.

8. Defendant is a music store with an address as set forth in the caption.

9. At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment/engagement with Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein as if set forth in full.

11. Plaintiff was hired by Defendant in or around August 1999 as a shipper.

12. In or around August 2006, Plaintiff underwent surgery for diverticulitis.

13. In or around early 2007, Plaintiff underwent a second surgery related to his diverticulitis.

14. In or around late 2008 and/or early 2009, Plaintiff was diagnosed with hypertension.

15. On April 15, 2009, employee John O'Connor, for no apparent reason, blew an air-compressed horn in the workplace.

16. Horns and/or the blowing of horns were not a part of Defendant's daily business practice and/or routine.

17. In fact, the horns and sirens were stored in another completely separate building, could be tested there without bringing them into the store, and could be tested and shipped from that building.

18. Moreover, the horns and sirens were only rented a few times a year and only needed testing at those times.

19. Thus Mr. O'Connor's use of same in the store was done solely for the purpose of harassing Plaintiff.

20. As a result of the extremely loud and sudden noise, Plaintiff suffered from heart palpitations and left the workplace in an ambulance to seek emergency treatment at the hospital.

21. Shortly thereafter, Plaintiff was diagnosed with episodic hypertensive crisis.

22. Thereafter, Plaintiff returned to work and requested that Defendant prohibit the blowing of horns inside the store.

23. Defendant could have accommodated this request without undue hardship, as the blowing of horns was not part of its general business practice and/or daily routine.

24. Despite Plaintiff's request, Defendant permitted Mr. O'Connor to continue blowing the horns inside the workplace.

25. Furthermore, Mr. O'Connor began to act in a hostile manner toward Plaintiff in retaliation for Plaintiff's request that the horns not be blown inside the building.

26. On June 4, 2009, Plaintiff provided Defendant with a physician's note stating in pertinent part the following:

   a. Plaintiff suffers from hypertension and hypertensive crisis and he is being treated for same.

   b. Plaintiff's "work environment has had a significant impact on the control of these conditions [hypertension and hypertensive crisis]." Furthermore, "[e]xcessive noise (air horns, screaming), fighting and general 'horseplay' constitute a hostile work environment for my patient."

   c. Moreover, "[i]t is clear from my records that the deterioration of [Plaintiff's] condition and, in general, his mental health, are a by-product of a juvenile and unsupervised work place."

4

      d. As Plaintiff was subjected to a hostile environment, as described above which exacerbated his medical conditions, Plaintiff's physician requested that the situation "be remedied in a [*sic*] expeditious manner."

Attached as "Exhibit A" is a true and correct copy of said note.

27. Despite Plaintiff's physician's instructions, Defendant permitted Mr. O'Connor to continue to blow horns inside the workplace.

28. Additionally, Mr. O'Connor also began to play sirens inside the workplace in a further attempt to harass Plaintiff.

29. Further, Mr. O'Connor would often sneak up behind Plaintiff and blow the horns simply to startle Plaintiff; it became a game for him to do so.

30. Furthermore, Mr. O'Connor would mockingly remark when hearing car horns outside the building, "Oh no! I'm going to drop dead."

31. On August 6, 2009, Plaintiff complained to Owner Steve Weiss of the hostile work environment and Mr. O'Connor's repeated harassment.

32. Despite Plaintiff's complaint, Defendant did not investigate and/or issue any effective remedial measures.

33. In or around August 2009, Plaintiff was diagnosed with Acute Stress Disorder as a result of the hostile environment created at work.

34. On or around August 18, 2009, Plaintiff submitted a note from his psychologist stating in pertinent part the following:

      a. "[I]t was my opinion that [Plaintiff] is affected by Acute Stress Disorder, primarily due to a hostile work environment."

  b. Plaintiff could return to work, "assuming that there is no more exposure to harassment or continuing features of a hostile work environment."

Attached as "Exhibit B" is a true and correct copy of said note.

  35. As a result of Plaintiff's hypertension and Acute Stress Disorder, Plaintiff suffered from the following episodic physical manifestations:

  a. Inability to focus, concentrate or read;

  b. Heart palpitations;

  c. Difficulty urinating and defecating;

  d. Loss of appetite;

  e. Vomiting; and

  f. Sharp abdominal pains.

  36. On or around October 1, 2009, Plaintiff again complained to Mr. Weiss of the hostile work environment which included but was not limited to Mr. O'Connor's repeated harassment and retaliatory harassment.

  37. Despite Plaintiff's complaints, Defendant did not investigate and/or issue any effective remedial measures; Defendant failed to accommodate Plaintiff.

  38. On November 19, 2009, Mr. O'Connor assaulted Plaintiff by hurling a freight cart at Plaintiff.

  39. On November 20, 2009, Plaintiff complained to Mr. Weiss of Mr. O'Connor's assault of him, the harassment, and the retaliatory harassment, all of which created a hostile work environment.

  40. Plaintiff further complained that the hostile work environment was exacerbating his diverticulitis and other medical conditions.

41. Despite Plaintiff's complaints, Defendant did not investigate and/or issue any effective remedial measures.

42. Thereafter, Mr. O'Connor continued harassing Plaintiff by blowing the air horns and sirens and creating a hostile work environment.

43. On or around June 22, 2010, Plaintiff's psychologist directed Plaintiff not to return to work as same was exacerbating Plaintiff's medical conditions.

44. The constant harassment by Defendant and/or its agents, coupled with Defendant's refusal to accommodate Plaintiff's need for the horns not to be blown inside, coupled with the animosity Defendant had shown due to Plaintiff's medical conditions and his complaints of harassment and retaliation, coupled with Defendant's failure to take remedial action, caused Plaintiff to be medically unable to work for Defendant, amounting to Plaintiff being constructively discharged. Plaintiff last worked for Defendant on or about June 25, 2010.

## COUNT I
### Violations of the Americans with Disabilities Act ("ADA")
**(Failure to Accommodate)**

45. The foregoing paragraphs are incorporated herein as if set forth in full.

46. Plaintiff's hypertension, hypertensive crisis, and acute stress disorder constitute disabilities within the meaning of the ADA.

47. Defendant perceived Plaintiff's hypertension, hypertensive crisis, and acute stress disorder as disabilities.

48. Plaintiff requested a reasonable accommodation from Defendant in that he requested that horns not be blown in the workplace, as the excessive noise exacerbated his medical conditions.

49. Defendant could have granted Plaintiff this accommodation without undue hardship, but refused to do so.

50. Plaintiff requested a reasonable accommodation from Defendant in that he requested that Mr. O'Connor stop harassing him by blowing the horns.

51. Defendant could have granted Plaintiff this accommodation without undue hardship, but refused to do so.

52. Defendant's aforementioned conduct is in violation of the ADA and has caused Plaintiff to suffer damages.

## COUNT II
## Violations of the ADA
### (Retaliation)

53. The foregoing paragraphs are incorporated herein as if set forth in full.

54. Plaintiff requested a reasonable accommodation from Defendant in that he requested that horns not be blown in the workplace, as the excessive noise exacerbated his medical conditions.

55. Plaintiff requested a reasonable accommodation from Defendant in that he requested Defendant stop the hostile work environment caused by John O'Connor.

56. Requesting a reasonable accommodation for a disability is clearly a protected activity under the ADA.

57. Defendant retaliated against Plaintiff by permitting Mr. O'Connor to continue blowing the horns and then sirens, creating a hostile work environment for requesting the accommodation.

58. Defendant constructively discharged Plaintiff due to Plaintiff's disability and/or because Plaintiff requested accommodation for same.

8

59. Defendant's aforementioned conduct constitutes retaliation under to the ADA and has caused Plaintiff to suffer damages.

## COUNT III
### Violations of the Pennsylvania Human Relations Act (PHRA)
### (Disability Discrimination)

60. The foregoing paragraphs are incorporated herein as if set forth in full.

61. Defendant's foregoing conduct constitutes unlawful discrimination against Plaintiff on the basis of his disability and/or perceived disability.

62. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

## COUNT IV
### Violations of the Pennsylvania Human Relations Act
### (Retaliation)

63. The foregoing paragraphs are incorporated herein as if set forth in full.

64. The foregoing conduct by Defendant constitutes unlawful retaliation in violation of the PHRA.

65. As a result of Defendant's unlawful actions, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice, or custom of refusing reasonable accommodations for employees or prospective employees based on their ADA qualifying needs and/or health conditions;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past, lost, and future earnings.

C. Plaintiff is to be awarded liquidated damages and/or punitive damages in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful,

deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

    D.    Plaintiff is to be awarded damages for emotional distress and/or pain and suffering (as permitted by applicable law) and is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate;

    E.    Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal law;

    F.    Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**SWARTZ SWIDLER, LLC**

*/s/ Richard S. Swartz*
Richard S. Swartz, Esq.
Justin L. Swidler, Esq.
1878 Marlton Pike East, Suite 10
Cherry Hill, NJ 08003
(856) 685-7420
(856) 685-7417 Fax

Dated: August 31, 2012

# EXHIBIT A

Michael J. Palazzolo, M.D.
821 Huntingdon Pike Suite 205
Huntingdon Valley, PA 19006

June 4, 2009

RE: Michael Mahoney (12/23/1964)

To Whom It May Concern:

Mr. Mahoney is a patient under my care. Among his known conditions, Hypertension and, on occasion, Hypertensive Crisis, have been conditions for which I have had to treat him. It is clear from my discussions with him that his work environment has had a significant impact on the control of these conditions. Excessive noise (air horns, screaming), fighting, and general "horseplay" constitute a hostile work environment for my patient. It is clear from my records that the deterioration of his condition and, in general, his mental health, are a by-product of a juvenile and unsupervised work place. I would hope that this situation could be remedied in a expeditious manner as he is entitled to work in an environment devoid of threats to his health and intimidation. I hope this letter is explicit enough to address the medical concerns of his situation.

Sincerely,

Michael J. Palazzolo, M.D.

# EXHIBIT B

# Grand & Verdi, LLC

Practice of Psychology
www.grandandverdi.com

Jeffrey S. Grand, PsyD
Anthony F. Verdi, PhD

August 18, 2009

To Whom It May Concern:

I have met Mr. Michael Mahoney once for a diagnostic interview and examination on August 12, 2009. At that time it was my opinion that he is affected by Acute Stress Disorder, primarily due to a hostile work environment. I see no obstacle to his returning to work at this time, assuming that there is no more exposure to harassment or continuing features of a hostile work environment. If he is able to work in an environment that is free of further incidents, he may have some continuing anxiety, but his symptoms do not and are not likely to present a danger to himself or others.

*[signature]* /PsyD

Jeffrey S. Grand, Psy.D.
Licensed Psychologist

PO Box 349
Huntingdon Valley, PA 19006
Fax 215-728-3751